UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| BCD, LLC; ROSEN CAMPUS I, LLC; CR-MERC, LLC; AND ROSEN-WT MANAGEMENT, LLC, <br><br>  Plaintiffs, <br><br> vs. <br><br> BMW MANUFACTURING CO., LLC f/k/a BMW MANUFACTURING CORP., <br><br>  Defendant. | C/A No. 6:05-CV-2152-GRA <br><br> **ORDER ON DEFENDANT'S** <br> **MOTION TO CERTIFY** <br> **QUESTION** <br> (Written Opinion) |

This matter is before the Court on Defendant's motion to certify a question to the South Carolina Supreme Court, filed October 27, 2006. This Court heard oral arguments on the motion on December 28, 2006. After carefully considering the oral arguments presented by the parties, as well as the motions and memoranda filed in this matter, this Court DENIES Defendant's Motion to Certify for the reasons stated below.

**BACKGROUND**

This action arises out of various business negotiations and transactions involving Plaintiffs BCD, LLC, Rosen Campus I, LLC, CR-MERC, LLC, and Rosen-WT Management, LLC ("Plaintiffs"); Defendant BMW("Defendant"); Clemson University; Clemson University Foundation; AMREC, LLC; Clemson University Real Estate

1

Foundation; the South Carolina Department of Commerce; the City of Greenville; and others. The business transactions at issue in this case all involve the proposed development of an automotive research park and Graduate Engineering Center in Greenville, South Carolina. Plaintiffs negotiated with Clemson University Real Estate Foundation's AMREC, LLC, to develop an automotive research park and campus that would include a state-of-the-art wind tunnel. Plaintiffs bring this suit alleging Defendant interfered with these negotiations, resulting in a breach of its agreements with AMREC and the collapse of its plans to develop a wind tunnel. Plaintiffs' complaint alleges tortious interference with contractual relations, interference with prospective contractual relations, and civil conspiracy.

## **DISCUSSION**

Defendant BMW requests that this Court certify the following question to the South Carolina Supreme Court:

> Does South Carolina law recognize the "Stranger Doctrine," which states that in order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract?

Rule 228 of the South Carolina Appellate Court Rules permits federal courts to certify questions to the South Carolina Supreme Court "if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." Rule 228,

SCACR.  This court holds the requirements of Rule 228 have not been met, and therefore certification of the question submitted by Defendant should be denied.

### I) "Determinative of the Cause"

Defendant BMW argues that the "Stranger Doctrine" has never been adopted in South Carolina, but if adopted, would "conclusively resolve the issue at this stage." Defendant's Motion to Certify, p. 1.  However, Defendant admits that it believes "Plaintiffs' tortious interference claims cannot withstand scrutiny under existing South Carolina law."  Defendant's Memorandum in Support of Motion, p. 2.  If the law as it exists may be conclusive as to Plaintiffs' claims against Defendant, then certification would result in unnecessary expense and delay in these proceedings.  This Court does not believe the existing law or the facts of this case support certification.  The law as it stands in South Carolina may already be determinative of the issues raised in the case.  Therefore, certification of the issue raised by Defendant would not further the proceedings or provide substantial guidance to the Court under the facts presented.

### II) "No Controlling Precedent"

BMW argues that there is no controlling precedent addressing the "Stranger Doctrine" in South Carolina.  The "Stranger Doctrine" has been adopted in various forms in a limited number of jurisdictions, including Georgia, Alabama, and Florida. *See Ernie Haire Ford, Inc. v. Ford Motor Co.,* 260 F.3d 1285, 1294 (11th Cir. 2001) (applying Florida law);  *Waddell & Reed, Inc. v. United Investor Life Ins. Co.,* 875 So.2d 1143, 1157 (Ala. 2003); *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 503 S.E.2d

3

278, 283 (Ga. 1998). This doctrine extends protection from liability for tortious interference claims to not only third parties, but also to strangers of the contract at issue. "Thus, in order for a defendant to be liable for tortious interference with contractual relations, the defendant must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract." *McLane*, 503 S.E.2d at 283 (citations omitted). In some jurisdictions, the doctrine offers an even more expansive protection by encompassing "all parties to an interwoven contractual arrangement." *Id.* This more expansive interpretation is the basis for this motion, as Defendant BMW argues South Carolina law would support such an expansion to the tort of interference with contract.

South Carolina law of tortious interference has never adopted the Stranger Doctrine, but has consistently provided protection to all third parties of a contract from the tort. *Ross v. Life Ins. Co.*, 273 S.C. 764, 766, 259 S.E.2d 814, 815 (1979). This protection does not expressly encompass "all parties to an interwoven contractual arrangement," *McLane*, 503 S.E.2d at 283, but does extend to parties engaging in legitimate business activity. *See Gaillard v. Fleet Mtg. Corp.,* 880 F. Supp. 1085, 1089 (D.S.C. 1995) (acknowledging "[i]nterference with a contract is justified when it is motivated by legitimate business purposes"); *see also Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co.,* 992 F.2d 59, 60-61 (4th Cir. 1993) (asserting "the tort law of South Carolina does not make legitimate competitive behavior actionable").

4

South Carolina's approach to tortious interference may be a more narrow one than that taken by states adopting the "Stranger Doctrine," but a more narrow body of law in no way indicates a lack of controlling precedent on the subject.  Further, though South Carolina has not adopted the "Stranger Doctrine" in name, the law as it exists provides comparable protection to that of the "Stranger Doctrine," rendering certification of this issue unnecessary.

Finally, this Court may grant a motion for certification only "when there is no ample precedent to guide the certifying court as to the answer the state court would provide."  *Smith v. FCX, Inc.*, 744 F.2d 1378 (4th Cir. 1984).  It is well established in this circuit that "[o]nly if the available law is clearly insufficient should the court certify the issue to the state court."  *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (citing *Smith*, 744 F.2d. at 1378).  As illustrated above, the law in South Carolina offers sufficient and ample insight on the tort of interference with contractual relations.  Therefore, certification on this issue is neither necessary or appropriate.

## **CONCLUSION**

After reviewing the law on tortious interference in South Carolina, this Court finds the law as it stands is adequate to address the issues before the Court in this case.

IT IS THEREFORE ORDERED that Defendant's Motion to Certify is hereby DENIED.

IT IS SO ORDERED.

G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

January  12 , 2007

Anderson, South Carolina

6